## IN THE UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| AMANDA BARBOUR and COREY MAAK, | ) | 1:20-cv-2279 |
| PARENTS AND NATURAL GUARDIANS OF | ) | |
| CORBIN MAAK, DECEASED, | ) | |
| | ) | |
| PLAINTIFFS, | ) | |
| VS. | ) | |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| DEFENDANT | ) | |

### COMPLAINT FOR DAMAGES UNDER THE FEDERAL TORT CLAIMS ACT

Plaintiffs, Amanda Barbour and Corey Maak, parents and natural guardians of Corbin Maak, a minor child now deceased, by counsel Hugh G. Baker Jr., Patrick V. Baker and the Baker Law Team, for their Complaint against the Defendant, United States of America, state as follows:

### INTRODUCTION

1. This is an action against the Defendant United States of America under the Federal Tort Claims Act, (28 U.S.C.§2671, *et seq*.) and 28 U.S.C.§1346(b)(1) for negligence and professional malpractice in connection with medical care provided to Plaintiff Amanda Barbour and her deceased infant son, Corbin Maak, by the Health and Human Services agency (HHS) of the Federal Government through *HealthNet*, a not- for -profit 501(c) (3) corporation providing primary care health services to the medically underserved at its

1

*Barrington Health and Dental Center* in Indianapolis, Indiana, and at *IU Methodist Hospital* in Indianapolis, Indiana.

2.   The Claims herein are brought against the Defendant pursuant to the Federal Tort Claims Act (28 U.S.C.§2671, *et seq*.) and 28 U.S.C.§1346(b)(1), for money damages as compensation for personal injuries caused by the Defendant's negligence.

3.   Plaintiffs Barbour and Maak have fully complied with the provisions of 28 U.S.C. § 2675 of the Federal Tort Claims Act.

4.   This suit has been timely filed, in that Plaintiffs timely served notice of their claims on HHS and the United States Department of Justice.

5.   Plaintiffs Barbour and Maak are now filing this Complaint pursuant to 28 U.S.C.§2401(b) after receiving the HHS's notice of final determination denying the Plaintiff Barbour's Claim No. 2019-0702. Plaintiff Maak's claim, joined under the same Claim Number, was received by Defendant on October 23, 2019, and deemed denied on April 23, 2020.

## PARTIES, JURISDICTION AND VENUE

6.   Plaintiffs Amanda Barbour and Corey Maak are, and at all times relevant hereto were, residents of Marion County, Indiana.

7.   Defendant United States of America, through its agency the Department of Health and Human Services (HHS), funds *HealthNet,* which administers, staffs, and operates the *Barrington Health and Dental Center (referred to as Barrington),* located at 3401 E. Raymond St., Indianapolis, Indiana 46203.

2

8.      HealthNet also provides certified midwives and licensed doctors to staff the obstetrics/gynecology triage unit at *IU Health Methodist Hospital*, located at 1701 N. Senate Av., Indianapolis, Indiana 46202. These medical professionals provide care and treatment to HealthNet patients at *IU Health Methodist Hospital.*

9.      *HealthNet* is a health center and a Health Center Program (HCP) grantee under 42 U.S.C.§ 254b, and a deemed Public Health Service employee under 42 U.S.C. § 233(g)-(n).

10.     Defendant United States of America, and the directors, officers, operators, administrators, employees, agents, and staff of  *HealthNet* , both at *Barrington Health and Dental Center* and at *IU Health Methodist Hospital*, are hereinafter collectively referred to as "*Barrington Health Center*". At all times relevant to this Complaint, *Barrington Health Center* held themselves out to the Plaintiffs and eligible beneficiaries as a provider of high-quality health care services, with the expertise to treat and care for, and to maintain the health and safety of, patients like the Plaintiffs.

11.     At all times relevant to this Complaint, the directors, officers, operators, administrators, employees, agents, and staff at *Barrington Health Center* were employed by and/or acting on behalf of the Defendant. Furthermore, the Defendant is responsible for the negligent acts of their employees and agents under respondeat superior.

12.     Jurisdiction is proper under 28 U.S.C.§1346(b)(1).

13.    Venue is proper under 28 U.S.C.§1402(b) in that all, or a substantial part of the acts and omissions forming the basis of these claims occurred in the Southern District of Indiana.


## FACTUAL ALLEGATIONS

14.    On September 26, 2017, Amanda Barbour (Ms. Barbour), aged 23, attended her initial OB visit at *Barrington*. This was her first pregnancy; she was evaluated by Cheryl Newbold-Thompson, C.N.M., and was given an estimated due date (EDD) of April 8, 2018.

15.    Ms. Barbour advised *Barrington* at this first visit that she had a history of Pelvic Inflammatory Disease (PID), a known risk factor for premature labor.

16.    On October 16, 2017, the *Barrington Health Center* confirmed via Ms. Barber's Eskenazi Health medical records that she was treated for PID the prior year.

17.    On February 2, 2018, Ms. Barbour saw Blythe Kinsey C.N.M. at *Barrington* for her regular prenatal appointment, and she had third trimester labs drawn. The lab results showed an elevated white blood cell (WBC) count of 11.1, above the normal range of 3.4--10.8.

18.    On Feb 8, 2018 at 3:23 a.m., Ms. Barbour had a web encounter with *Barrington Health Center* and requested a new appointment, due to vaginal irritation. Stephanie Webb R.N. followed up with Ms. Barbour by e-message, but the medical records do not indicate any treatment was provided Ms. Barbour.

19.    Ms. Barbour was next seen at *Barrington* by Blythe Kinsey C.N.M. on February 16, 2018. The medical records do not indicate that Nurse Kinsey discussed either

the elevated WBC, or the vaginal irritation complained of on February 8, 2018.

20.    On March 1, 2018, Ms. Barbour presented to the triage at *IU Health Methodist Hospital (Methodist Hospital)* complaining of vaginal bleeding, nausea, and heartburn, at 34 weeks 3 days. Ms. Barbour was admitted in observation status to the labor and delivery unit by Margaret Capobianco, M.D. OB/GYN resident PGY-1.

21.    Her staff sponsor, Tamara I. Mendez, M.D., an OB/GYN doctor from *Barrington Health Center*, signed off on the admission history and physical notes.

22.    Continuous fetal monitoring was ordered with a plan for a formal ultrasound to reassess placental position the next day.  Betamethasone injections were ordered to facilitate fetal lung development in case the baby delivered early.

23.    Penicillin G Potassium was ordered IV piggyback for unknown group B strep (GBS) status, but the GBS culture came back negative on March 2, 2018.

24.    Abnormal lab results for this admission included:  White blood cell count (WBC) 12.2 (high--normal reference range 3.6-10.6), Fibrinogen 440 mg/dL (high).

25.    Although Drs. Capobianco and Mendez ordered the collection of Ms. Barbour's urine for a drug screen, there is no documentation of a urinalysis or urine culture ever being ordered throughout her stay from March 1-3, nor did they discuss or treat her abnormal bloodwork results.

26.    On March 2, 2018, a formal transabdominal ultrasound was done which showed a posterior placenta with no evidence of abruption, normal amniotic fluid volume and small placental lakes. Ms. Barbour's mild contractions subsided, and the bleeding stopped.  Her cervix showed change from 2.5 cm to 3.0 cm, but there was

no cervical change during the last 24 hours of her admission. The fetal heart rate remained reassuring. Her baby was viable.

27.    On March 3, 2018, Ms. Barbour was discharged home in stable condition.

28.    On March 5, 2018, Plaintiff Barbour was seen at *Barrington* by Megan E. Kammer, C.N.M. for a routine prenatal visit at 35 weeks gestation.  There is no documentation to indicate that her hospital admission or abnormal lab results of a few days prior were reviewed by CNM Kammer or discussed with Ms. Barbour.

29.    On the morning of March 9, 2018, Ms. Barbour arrived at the triage at *Methodist Hospital* once again at 08:00, complaining of painful contractions and vaginal bleeding which started at 23:00 the night before.  Labs and cultures were ordered stat, including a complete blood count (CBC), blood chemistry, urinalysis, urine culture, and cultures for gonorrhea, chlamydia, and trichomonas.

30.    The CBC and blood chemistry results, reported at 09:38 and 10:11 on March 9, 2018, were significant for abnormal values including an again-elevated WBC of 15.9, a marked increase compared to the also abnormal result of 12.2 back on March 1, 2018.

31.    The urinalysis result, reported at 09:40 am on March 9th, was also significant for elevated WBCs 50-100/hpf (ref. range </=2-5 WBCs/hpf).

32.    Although these labs were ordered stat and the results were available to Ms. Barbour's healthcare providers in a timely manner, the results were never reviewed or discussed with Ms. Barbour. No treatment was initiated for a urinary tract infection.  No prescriptions for antibiotics were given.

33.    An addendum to the triage visit record by Anthony Lathrop, C.N.M., a certified

nurse midwife from *Barrington Health Center* working at *Methodist Hospital* written on March 9, 2018 at 10:56 am states only: "Contractions subsided both per pt. report and toco monitoring after IV fluids.  Cervical exam unchanged after 2+ hours observation.  Will discharge home, FU office as planned, low threshold to return for contractions/rom/bleeding or any other labor signs."

34. Lab results for the urine cultures, chlamydia and trichomonas were still pending at discharge.  The urine culture and sensitivity results were reported by the lab the evening of March 10th at 19:41 pm. Ms. Barbour's urine was growing E-coli. The final report showed >100,000 cfu/ml Escherichia coli susceptible to all listed antibiotics except for Ampicillin and Ampicillin/Sulbactam.

35. The urine culture results were never reviewed by any of Ms. Barbour's health care providers at *Methodist Hospital* or at *Barrington Health Center,* nor was Ms. Barbour ever notified.

36. On March 11, 2018, Ms. Barbour began having contractions at 03:00 am and arrived at *Methodist Hospital* triage in active labor about 06:00 am.  At 07:33 she was fully dilated. Karla Fehd, M.D, an OB/GYN doctor from *Barrington Health Center*, who was the attending staff physician and sponsor for the OB residents, was aware of her admission and visited her bedside at this time.

37. Baby boy Corbin Maak was born at 09:06 am on March 11, 2018.

38. Corbin's Apgar scores were 1 at 1 minute, 3 at 5 minutes, and 6 at 10 minutes, indicating that he had been severely compromised in utero and at birth.

39. Baby Corbin's hospital course did not go well. His initial physical exam showed a lethargic neonate with poor response to stimuli, decreased activity, posture with

mild distal flexion, incomplete Moro and suck reflexes, and dilated pupils with sluggish reactivity. His arterial umbilical cord blood gases were consistent with hypoxemia in utero.  His diagnoses at admission were: Suspected Neonatal Hypoxic Encephalopathy, Respiratory Failure, and Suspected Sepsis.

40.    Baby Corbin was temporarily treated at Methodist Hospital and was transferred to the NICU at Riley Hospital for Children for therapeutic hypothermia on the evening of March 11th.  An electroencephalogram (EEG) done earlier at 16:44 pm was abnormal, showing severe diffuse encephalopathy.  His blood cultures were positive for E-coli, so Cefepime was added to his antibiotic regimen.

41.    The documentation at Riley Hospital noted that the maternal history was remarkable for a recent urine culture positive for Escherichia coli (E-coli), which had yet to be recognized or treated by Ms. Barbour's health care providers at *Barrington Health Center* and *IU Health Methodist Hospital*.

42.    Urinary tract infections (UTI) are known to be an underlying cause of preterm labor and pose a risk of sepsis in the developing fetus.

43.    Ms. Barbour was discharged on March 12, 2018 by Dr. Jana Seitz, an OB/GYN doctor from *Barrington Health Center* without being advised of or treated for a now-raging E-coli infection. The lab results from Ms. Barbour's previous hospital visit on March 9, 2018 were significant for a WBC of 15.9 and a urine culture growing E-coli.  The WBC result from her hospital visit on March 11th increased to 20.2.  There is no documentation in any of the records provided showing that these abnormal lab values were reviewed or treated by any of her healthcare providers, including those from *Barrington Health Center,* between **March 1,**

8

**2018, and her discharge on March 12, 2018 after delivery.**

44.   It was not Ms. Barbour's physicians and midwives, including several from *Barrington Health Center,* who discovered her urinary tract infection; rather it was the NICU pediatricians at Riley who thoroughly reviewed the mother's chart and documented the untreated UTI.  This was listed as the cause of the E-coli sepsis in Baby Corbin.

45.   On the morning of March 13, 2018, Corbin developed severe desaturations in his oxygen levels and his condition continued to deteriorate.  Baby Corbin was held and comforted by his mother and father, and grandparents, and sadly, Corbin's death was pronounced at 09:30 am on March 13, 2018.

46.   The diagnoses at time of death was: Prematurity, Hypoxic Ischemic Encephalopathy (HIE), Respiratory Failure, Pulmonary Hemorrhage, Coagulopathy, and E-coli Sepsis.

47.   A comprehensive autopsy was performed on March 14, 2018 at IU Health Riley Hospital. The final report issued on May 28, 2018, confirmed that Corbin had died directly as a result of complications caused by the untreated E-coli Sepsis.

## CAUSES OF ACTION

## COUNT 1-NEGLIGENCE

48.   Plaintiffs Barbour and Maak reallege and reincorporate each and every allegation above as if fully set forth herein.

49.   The Defendant had a duty to provide that degree of care, skill, and proficiency exercised by reasonably careful, skillful, and prudent health care providers in the same or similar circumstances.

50.  The Defendant breached its duty of care to Amanda Barbour and to Corbin Maak, the now deceased son of Plaintiffs Barbour and Maak.

51.  At all times relevant to this Complaint, the Defendant had a duty to hire competent operators, administrators, employees, agents and staff in order to meet its standards of quality of care of its patients, including Plaintiff Amanda Barbour and her now deceased infant son, Corbin. The Defendant knew, or should have known, that the medical staff of the *Barrington Health Center* was not properly trained, and/or supervised, in a  manner necessary to provide a level of care for Ms. Barbour and  Corbin that met all applicable legal requirements and was consistent with the expertise of careful, skillful, and  prudent health care providers in the same or similar circumstances.

52.  The Defendant breached its duty by negligently hiring incompetent, inexperienced, and/or unqualified operators, administrators, employees, agents, and staff at its *Barrington Health Center and IU Methodist Hospital*.

53.  The Defendant had a duty to retain only competent and adequately trained operators, administrators, employees, agents, and staff at its *Barrington Health Center and IU Methodist Hospital* in order to meet its standards of quality of care of its patients.

54.  The Defendant breached its duty by negligently retaining incompetent, inexperienced, and/or inadequately trained operators, administrators, employees, agents, and staff at its *Barrington Health Center and IU Methodist Hospital.*

55.  As a direct and proximate result of the Defendant's carelessness and negligence, the Plaintiffs' baby boy, Corbin Maak, died on March 13, 2018.

10

56.   As a direct and proximate result of the Defendant's carelessness and negligence, the Plaintiffs have incurred medical expenses, have experienced grave emotional pain, suffering and mental anguish, which will continue in the future, and have been damaged in their ability to fully enjoy life.  They also have been deprived of the love and affection, care, comfort and support, which Corbin would have provided them had he lived, they have lost wages, and will continue to lose wages in the future.

57.   The acts and omissions set forth above would constitute a claim under the law of the State of Indiana.

58.   The Defendant is liable pursuant to 28 U.SC.1346(b)(1).

## COUNT II - VICARIOUS LIABILITY, RESPONDEAT SUPERIOR, OSTENSIBLE AGENCY AND/OR AGENCY

59.   Plaintiffs Barbour and Maak reallege and reincorporate each and every allegation above as if fully set forth herein.

60.   At all times relevant to this Complaint, the directors, officers, operators, administrators, employees, agents, and staff at the *Barrington Health Center* were employed by and/or acting on behalf of the Defendant.

61.   At all times relevant to this Complaint, the directors, officers, operators, administrators, employees, agents, and staff at *Barrington Health Center* were acting within their respective capacities and scopes of employment for the Defendant.

62.   The directors, officers, operators, administrators, employees, agents, and staff at *Barrington Health Center* negligently and /or recklessly, directly, and

11

proximately caused personal injury to Ms. Barbour and Mr. Maak, and caused the death of their infant son Corbin, including both acts of omission and commission.

63.   As a direct and proximate result of the Defendants' carelessness and negligence, the Plaintiffs have incurred medical expenses, have experienced grave emotional pain, suffering and mental anguish, which will continue in the future, and have been damaged in their ability to fully enjoy life.  They also have been deprived of the love and affection, care, comfort and support which Corbin would have provided them had he lived, and they have lost wages, and will continue to lose wages in the future.

64.   The acts and omissions set forth above would constitute a claim under the law of the State of Indiana.

65.   The Defendant is liable pursuant to 28 U.SC.1346(b)(1).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, Amanda Barbour and Corey Maak, hereby pray that judgment be entered in their favor and against Defendant as follows:

1.   For medical expenses, lost wages, pain and suffering, and loss of the  ability to fully enjoy life, and for the loss of  the love and affection, care, comfort and support which Corbin would have provided them had he lived, in the amount of Three Million, Three-hundred Thousand Dollars ($3,300,000.00.).

2.   For the costs of this action, for attorney fees, and for all other just and proper relief in the premises.

Respectfully submitted,

/s/ Hugh G. Baker, Jr.
Hugh G. Baker Jr., Atty # 2524-49,
Attorney for Plaintiffs,
Amanda Barbour and Corey Maak

Hugh G. Baker, Jr., #2524-49
Patrick V. Baker, #22266-49
BAKER LAW TEAM
2015 Broad Ripple Av.
Indianapolis, IN 46220
hugh@bakerlawteam.com
patrick@bakerlawteam.com
Phone: (317) 524-6900
Fax:    (317) 550-3996